Staples J.
delivered the opinion of the court.
The authorities are generally agreed, that a married woman possessed of a separate estate, may charge the same with her debts in like manner and to the same extent as a feme sole; but they are not agreed as to the mode by which the charge may be effected. Some of the cases hold that the intention to charge the separate *884 estate must be stated in the instrument evidencing the contract, or the consideration must be one going to-the direct benefit of the estate. In other cases it is held, that the execution of a bond or note bvthe wife, whether as principal or as surety, whether for her own benefit, or that of some other person, is indicative of an intention to charge the separate estate; since in no other way can the instrument have any effect. And this was the view taken in this court in Burnett & wife v. Haupe, 25 Gratt. 481.
Whatever conflict of opinion there may be upon this point, there is a great weight of authority in favor of the proposition, that the liability of the separate estate can only arise out of the supposed intention of the wife. And no pecuniary engagement can be a charge which is not connected by agreement, either express or implied, with the estate. The rule is thus laid down in a recent English case: If a married woman having separate property, enters into a pecuniary engagement, whether by ordering goods or otherwise, which if she were a feme sole would constitute her a debtor, and in entering into such engagement she purports to contract, not for her husband, but for herself, and on the credit of her separate estate; and it was so intended by her, and so understood by the person with whom she is contracting; that constitutes an obligation for which the person with whom she contracts has the right to make her separate estate liable; and the question whether the obligation was contracted in this mauner must depend upon the facts and circumstances of each particular case. Mrs. Matthewman’s case, Law R. 3 Eq. 787, 7 Eq. Cases 19; Johnson v. Gallagher, 7 Jurist U. S. 273. And the same view is taken generally in other cases. The engagement must appear to have been made with reference to and upon the faith *885 of the separate estate, or it carmot be enforced against it. 2 Perry on Trusts, sec. 659.
As the charge is a mere question of intention, the wife may of course extend it to the whole, or confine it to a part, of the separate estate. If no specific part is appointed for the payment of the debt, the fair implication is, that the whole estate was intended to be made liable. If on the other hand, only a part.of the ■estate, expressly or by fair inference, is designed to be ■charged, no liability whatever can attach to the residue. In all cases the remedies of the creditor will be ■confined to the particular property upon the faith of which it may reasonably be presumed he chose to rely.
This is a necessary consequence of the rule which exempts the wife from all personal liability, and from all personal decrees and judgments upon her contracts. Her undertaking, so far as it is recognized by the courts, is, not that she will pay the debt, but that her separate estate shall be answerable for it. And that is bound only so far as she has agreed it shall be ■bound.
In the case before us, at the date of the contract hereafter mentioned, Mrs. Williams, who is now Mrs. Dannall, was entitled to the estate conveyed by the deed of 20th November 1849, to that conveyed by the deeds of 29th April 1853, and of the 5th January 1857, respectively; also to the estate derived under the will of her father; and it seems to an interest in the “Peatross estate.” Being thus entitled, Mrs. Williams, on the 7th August 1860, united with her husband in the purchase of a crop of tobacco from the appellee’s intestate. And on the same day they entered into a written obligation, by which they promised and bound themselves to “convey to the intestate a sufficient interest in the Peatross estate to *886 secure him for his crop of tobacco.” There is no evidence of any engagement on the part of Mrs. Williams previous to the execution of this bond. The-fair inference is, that the purchase of the tobacco and the execution of the paper were contemporaneous acts—parts of the same transaction. At that time Mr-Robert "Williams, the husband, was notoriously insolvent. . His only means of paying his part of the purchase money was by an advantageous sale of the-tobacco. If that failed the whole burden would fall upon Mrs. Williams’ property. Under these circumstances she might be willing to convey or pledge her interest in the Peatross estate, as a security for the purchase money. She accordingly does convey it; but she does not agree to convey anything beyond that.
It is to be inferred that the intestate had made all necessary inquiries upon the subject, and that he was fully satisfied with the security provided for the payment of his debt. Two months after the purchase- and the execution of the bond, and after the amplest opportunity of informing himself, he procures from Mrs. Williams an order upon her attorney for-$4,153.22, the price of the tobacco, “to be drawn on whomsoever the court may appoint to distribute the Peatross estate.”
This plainly indicated that there was a fund belonging to Mrs. Williams under the control of some court; that her share had been ascertained, and that all parties considered it sufficient to pay the purchase money for the tobacco. Prom that day down to the bringing of this suit, nothing is heard of the order on the Peatross estate, or even the claim of the appellee’s intestate—so far as this record informs us.
There is no suggestion of any misrepresentation, or *887 fraud, or imposition, practiced upon the latter by Mrs. Williams in regard to the Peatross estate, or the extent and value of her interest therein: The court is left to grope its way entirely in the dark, as to the nature, character and final results of the transaction. The only satisfactory is, Williams was willing to charge her interest in the Peatross estate with the debt in question; and the intestate was content to accept the assignment as a sufficient security for his indemnity.
The bill alleges that the sale was made and the contract executed on the credit of the entire separate estate. It is true that Mrs. Williams did not answer; but her trustee did, and his answer sufficiently puts the complainant upon proof of all his material allegations. If in fact the assignment of the Peatross fund was merely by way of collateral security, and not intended to impair the creditor’s remedies against the property generally, it was incumbent upon him to offer some proof of the fact.
But if the complainant had supplied this proof it would then have devolved on him to account for the failure to collect the Peatross fund: what became of the order; whether it was ever presented; what was done with that fund; whether the intestate received any part of it; if he did not the reasons of his failure, are questions to which this record furnishes no answer. The bill does not even offer a word of explanation on the subject. And yet the Circuit court, in the absence of any information upon the subject, and without enquiry, has decreed the sale and application of Mrs. Williams’s entire estate, real and personal, derived under the will of her father in satisfaction of complainant’s debt.
It may be very true, that a married woman is to be *888 treated as a feme sole so far as the capacity to charge the estate with her pecuniary engagements is concerned: but if in a litigation involving that question, the pmsloand does not choose to defend her interests, and the trustee is negligent of his duty, it is incumbent upon the court to direct such enquiries as will prevent the sacrifice of her rights. The intestate having taken an assignment of the Peatross estate, he was bound as assignee to exercise due diligence in prosecuting the claim, and in no event could he have any recourse upon the other estate of Mrs. Williams unless he made it appear he had failed to make the claim available without any default on bis part.
The complainant having wholly failed to furnish the necessary evidence upon these two points, under ordinary circumstances a dismissal of his bill Would necessarily follow. But it is very apparent that the case has not been investigated upon its merits; a result attributable to the conduct of the defendants in the court below in a very great measure. The purposes of justice will be best subserved by remanding the cause to the Circuit court, for further proceedings, in conformity'with the views herein announced. It will then be incumbent upon the complainant to make good the averment of the bill that the sale was made upon the credit of the separate estate generally; that the assignment of the Peatross fund was not intended to affect the creditor’s right to resort to that estate; and that the failure to receive it was without default on the part of the intestate or his representatives.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the bond executed by *889 Mr. and Mrs. Williams on the 7th of August 1860, and the order given by Mrs. Williams on the 6th October, 1860, constituted an assignment of her interest in the Peatross estate; and that it was incumbent upon the appellee, before he could proceed against the separate property of Mrs. Williams devised under the will of her father, tó show that his testator, as such assignee, had exercised due diligence in prosecuting that claim; and that he had failed to recover the same without default on his part.
The court is further of opinion, that in the absence ■of any opposing evidence, said bond and order are to he regarded as showing simply an intention on the part of Mrs. Williams to charge her interest in the Peatross estate with the payment of the debt due the appellee’s intestate; andifinfact said debt was contracted with reference to Mrs. Williams’ separate property generally, as alleged in the bill, it devolved upon ■the appellee to establish the fact.
The court is further of opinion, that the said Circuit ■court erred in decreeing against the estate derived under the will, without inquiry and satisfactory information upon these points. It is therefore adjudged and ordered that the decree of 5th of June 1872 be reversed and annulled; and that the appellee, out of the •assets in his hands to be administered, do pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And this cause is remanded to said Circuit court, to be proceeded with in conformity with these views. And liberty is given complainant to show that the asssignment of the Peatross estate as aforesaid, was a mere collateral security, not designed to impair his equitable right to proceed against Mrs. Williams’ other separate property; and *890 further to show, that he or her testator had failed to* collect any part of said estate; and that his failure so to collect, was without default on the part of said intestate or his representative If satisfactory evidence-on these points is not adduced within a reasonable-time, to be judged by the said Circuit court, a decree-is to be entered dismissing complainant’s bill.
Decree reversed.