BURKS, J.
The heirs of Lucy Ann Leber, deceased, filed their bill in the chancery court of the city of Richmond against William M. Justis and others to set aside a deed made on the 7th day of May, 1847, by the said Lucy Ann Leber to John Watkins, and to have surrendered to them two lots of land near the city of Richmond, conveyed by said deed and claimed by the said Justis and others through said Watkins by successive conveyances.
The chancellor, at the hearing of the cause, rendered a decree declaring the deed to be absolutely null and void, and the lots to be the absolute property of the heirs, and refused to order an account requested by the defendants. *From this decree an appeal was allowed Justis by one of the judges of this court.
The record shows the following case: Lucy Ann Leber, the widow of Jesse Blackburn, deceased, being the absolute owner of some personal estate, and entitled to an estate for her life in a tract of land, some personal property and money, in comtemplation of marriage with Christian Leber, by deed dated, 14th February. 1833, conveyed and assigned her property and estate aforesaid to one Gustavus Adolphus Muir, to hold as trustee to her separate use. The trustee and intended husband united with her in the deed. After reciting the agreement between the parties and conveying the property to the trustee, the deed declares the following trusts: “To have and to hold the said property hereby conveyed unto the said Gustavus Adolphus Muir, his executors, administrators and assigns, upon such trusts, nevertheless, and for such intents and purposes, and under such provisions and agreements as are herein mentioned; that it to say, in trust for the said Lucy Ann Blackburn and her assigns, until the solemnization of the said intended marriage, then upon trust that the said Gustavus Adolphus Muir, his executors, administrators and assigns, shall and do permit the said Lucy Ann to have, receive, take and enjoy all the interest and profits of the said property assigned to and for her own use and benefit, uncontrollable as if she had never been married, and to transfer in such proportion and form as she, the said Lucy Ann Blackburn, shall, from time to time, direct, notwithstanding her coverture, by any writings under her hand and seal, attested by three or more credible witnesses, or by her will and testament, in writing, to be by her signed, sealed, published and declared in the presence of the like number of witnesses, direct, limit or appoint, to the intent that the same may not be at the disposal of or subject in *any manner to the control, debts, forfeitures, or engagements of the said Christian Leber, her intended husband.”
The contemplated marriage was solemnized, and on the 22d day of October, 1838, Mrs. Leber, by writing under her hand and seal, attested by three witnesses, directed Henry L. Carter (who had been substituted as trustee in the place of Muir) to purchase for her two lots of land near the city of Richmond, owned by one Bernard Briel, provided the purchase could be made for $1,750, and further directed that in case the purchase could be effected, the purchase money should be paid out of the property held by said Carter as her trustee, or out of the proceeds of the sale thereof. It will be observed that this writing was in strict pursuance of the power reserved by the deed of settlement. Carter, the trustee, accordingly made the purchase of the lots at the price limited by the written authority of Mrs. Leber, and Briel and wife conveyed the same to him by deed dated the 22d day of October, 1838. This deed refers to and recites in part the deed of settlement, and also refers to and annexes the written authority of Mrs. Leber for making the purchase, and contains the following declaration of trusts:
“Upon the trusts, however, and for the purposes declared and expressed in the said indenture or marriage settlement first herein recited, executed to the said Gustavus Adol *194 phus Muir, bearing date the 14th day of February, 1833, and in whose place and stead the said Henry L. Carter has been appointed trustee as aforesaid, so that the said Lucy Ann Leber, late Lucy Ann Blackburn, may have, receive, take and enjoy all the interest and profits of the said property hereby conveyed and transferred in like manner is as provided in relation to the property assigned by the said indenture of the 14th day of February, 1833, and so that she may have the same ^rights, power and authority in all respects over the property hereby conveyed, assigned and transferred, that she has or had over what was assigned by the said indenture.
Carter, the trustee, afterwards died, and by decree of court, on a bill filed for the purpose, John Watkins and Charles H. Leber were appointed trustees, and invested with all the power and authority which were vested by the marriage settlement in the original trustee; and by the terms of the decree they were expressly “directed and required to take and hold all the property, real and personal, and all the money therein specified, and all other property, money or effects that the said Lucy Ann Leber may have acquired under and by virtue of the said marriage settlement, and to hold the same subject to all the uses, trusts and conditions specified and declared in the said deed of marriage settlement.”
The trustees thus appointed accepted the trust, and on the 7th day of May, 1847, Mrs. Leber, still a married woman, by deed of that date conveyed, or attempted to convey, the two lots aforesaid to Watkins, one of her trustees. The deed was not executed by her husband, nor by either of the trustees. She alone signed it, and it was acknowledged by her before the clerk in his office for recordation, without privy examination and certificate thereof, and there was no writing directing a conveyance, signed, sealed and attested, as required by the deed of settlement.
All three ‘of the deeds mentioned were recorded, and the deed to Watkins refers to the other two deeds as of record. It recites correctly the dates of the other two deeds and the names of the parties thereto, and describes the property embraced in the marriage settlement as “conveyed to G. A. Muir, in trust, to hold the same to the separate use and benefit of the said Lucy Ann, to be *used and enjoyed by her as fully as though she were a feme sole, and to be transferred and conveyed to such person or persons as she should, J>y any writing under hand and seal, attested by three or more credible witnesses, direct, notwithstanding her coverture, and free from any control, contracts or liabilities of her husband, the said Christian Leber.” It purports to be a deed of bargain and sale ■ for the consideration of $1,500, “which sum,” it is recited, “has been paid by the said John Watkins to the said Lucy Ann Leber and invested iii other property.”
The deed also contains a covenant of warranty in these words: “And the said Lucy Ann Leber, for hérself .and her heirs, the title to the said two lots or pieces of land, with the buildings and appurtenances thereunto, unto him, the said John Watkins, his heirs and assigns, do by - presents warrant, and will forever defend against the claims and demands of all persons whomsoever.”
Watkins took possession of the land under the deed and held it until his death, which occurred in the latter part of the year 1861, and it then passed in parcels by successive conveyances to different alienees, the appellant being one of them.
Mrs. Leber died intestate on the 27th day of October, 1862. Her husband, Christian Leber, survived her and died on the 27th day of March, 1864. Charles H. Leber, the co-trustee _ of Watkins, died in June, 1870. The heirs filed their bill in March, 1875.
The first question to be determined, is whether the deed of the 7th May, 1847, from Mrs. Leber to Watkins, under whom the appellant claims, passed a good title to the lots therein mentioned. At the date of this deed, Mrs. Leber was a married woman, and the lots were clearly a portion of her separate estate. Whether *the deed, therefore, passed a good title, depends on the power she had to dispose of her separate estate.
In England, according to recent decisions, the power of a married woman in equity over her separate estate, both real and personal, unless restricted by the instrument creating it, is for the most part, that of absolute owner. There, in the absence of such restrictions, she may charge it, encumber it, alien and devise it by her sole act as effectually as if she were unmarried. In Virginia, her power is not quite so large. For here, while she may dispose of her separate personal estate and the rents and profits of her separate real estate in the same manner as if she were a feme sole, unless restrained, as she may be, by the instrument creating the estate, yet as to the corpus or body of her separate real estate, according to the course of decision of this court, she can dispose of that only in the mode, if any, prescribed by the instrument creating the estate, or unless prohibited expressly or impliedly by such instrument, in the mode prescribed by law for the alienation of real estate by married women, or by last will and testament, it would seem as provided for the first time by the Code of 1849. See Code of 1873, ch. 118, § 3; 3 Lomax Dig. (ed. 1855), 11, note 1.
These are well settled principles; but whether, where the instrument creating the estate prescribes a mode of disposing of it, the prescribing of that mode, without negative words, is to be construed as intended to exclude any other, on the principle of the maxim expressio unius est exclusio alterius, or the maxim of like import expressum facit cessare taciturn, is still “a much vexed and unsettled question” in this state. McChesney & al. v. Brown’s heirs, 25 Gratt. 393, 401; Penn & als. v. Whitehead & als., 17 Gratt. 503, 514; Nixon v. Rose, trustee, 12 Gratt. 425. 431, 432: Woodson, trustee, v. Perkins. 5 Gratt. 345; Lee v. Bank U. States, 9 Leigh 200; William *195 son *& Beckham, 8 Leigh 20; Vizonneau v. Pegram, 2 Leigh 183; West v. West’s ex’or, 3 Rand. 373; McDowell v. Burging; Hawley v. Flint; Bank of Greensboro’ v. Chambers & others; (the three cases last named lately decided by this court at Richmond, and not yet reported); Hulme v. Tenant, 1 Lead. Cas. Eq. Part 2 (ed. 1876), 679, et seq., and English and American Notes.
How, if at all, equitable separate estates, of which we have been speaking, where they have been created by settlements since the married women’s act recently passed by the legislature, will be affected by such act, need not now be considered, as the act is not retrospective. Acts 1876-77, ch. 329, pp. 333, 334; Acts 1877-78, ch. 265, pp. 247, 248. Under the deed of marriage settlement, Mrs. Leber reserved to herself the power of a feme sole over “all the interest and profits” of the property conveyed by that deed. This is plain from the language employed; the trust being to permit her “to have, receive, take and enjoy all the interest and profits of the said property hereby assigned to and for her own use and benefit, uncontrollable as if she had never been married.” These terms import absolute dominion and unlimited power of alienation, but they are confined to the “interest and profits.” They do not extend to the disposition of the “property” from which the “interest and profits” were to be derived. On the contrary and in immediate connection, she provides for the disposition of the “property,” the principal subject, and prescribes for herself a particular mode of disposal. It might be argued with great force, upon the principle expressum facit cessare taciturn, that the express reservation of “uncontrollable” power over the interest and profits, and in the same connection a special designation of a particular mode of disposal of the principal subject should be construed as intended to exclude any other mode of disposing of such principal subject. However that may be, the writing of *the 22d October, 1838, which she gave the trustee Carter, was a strict execution of the power reserved over the trust property. Whether the purchase money paid Briel for the two lots was “paid out of the property or the proceeds arising from the sale thereof,” as authorized by the writing, or out of “the interest and profits” of the property, does not appear by the record, nor it is material. From whichever source derived, it was invested in real estate, subject substantially to the same powers and trusts provided by the deed of marriage settlement, as a comparison of the last-named deed with the deed from Briel and wife will show; that is, with absolute power in the wife to dispose of the rents and profits as if she were a feme sole, and with power to dispose of the corpus or principal subject, either in the mode prescribed by the deed, or if the prescribing of that mode does not exclude any other, then in the mode provided by law for the alienation of real estate’by married women, to-wit: by deed in which her husband should unite, with her acknowledgment and privy examination taken and certified, as the statute requires, and the deed duly admitted to record. As the latter mode was not adopted, it becomes unnecessary to decide what would have been the effect if it had been adopted, and to determine the “vexed question” before referred to. I, therefore, express no opinion upon it.
I do not perceive on what ground it can be maintained that the execution of the deed to Watkins was such a disposition of the property as is authorized by the deed of settlement. The writing contemplated is a writing under the hand and seal of the cestui que trust, attested by at least three credible witnesses, directing the trustee to convey or transfer the property as may be appointed. The deed executed has none of the requisites, except that it is a writing under the hand and seal of the cestui que trust. Tt does not in terms direct a conveyance *or transfer of the property, is not addressed to the trustees with that view,. and it is not attested. It is contended, however that it is an attempted execution of a power and such a defective execution as will be aided by a court of equity. It is certainly true that in some cases in favor of certain classes, equity will give such aid. It will do so in behalf of bona fide purchasers for value and some other parties, where the instrument by which the execution is attempted is informal or inappropriate, or being formal or appropriate, the execution is informal, as where a certain number of witnesses is required and a less number is present, or where the instrument is required to be signed and sealed, and it is signed only, and so on. Toilet v. Toilet, 1 Lead. Cas. Eq. (ed. 1876), top page 365, 372.
Aid is extended where the defect is in matter of form, never where it is in matter of substance. In the case before us the instrument is not only inappropriate, and the execution of it not according to the form prescribed, in that it is not attested by the requisite number of witnesses, but it is not attested at all. This is more than a mere informality. Attestation in some form, at least, or to some extent, would seem to be requisite. I regard it as essential to the due execution of the power in cases like the one before us. In marriage settlements the object generally is two-fold — to protect the-wife against the control and influence of her husband, and also against her own weakness and incapacity, and I am not disposed, by construction and the active assistance of the court, to break down the safe-guards which she lias deliberatelv thrown around herself and her property. By the instrument creating her separate estate, Mrs. Leber chose to restrain, limit and regulate her power of disposing of that estate. Equity, deviating from the rule of the common law, accorded her this right. The restraint imposed was a modification of her estate. She proper *to make the presence of witnesses” — “at least three credible witnesses” — necessary to attest the disposition of her property, and for a court of equity to give effect to an alleged disposition,. *196 and that to her own trustee, made in the absence of any witness, would seem more like creating a power than aiding in the execution of one.
It may be that Watkins, although _ trustee, yet being merely the passive depository of the legal estate, without any beneficial interest in it or power over it except to convey and transfer it to the'appointee of his cestui que trust, acting m good faith, might not have been incapacitated, by reason of his fiduciary relation, from making a valid purchase of the equitable estate, if, in making the purchase, the provisions of the deed of settlement had been observed; but, as we have seen, they were not observed in any essential particular, and I am therefore of opinion that he acquired no estate, right, title, or interest, legal or equitable, under the pretended deed of the 7th May, 1847.
2. Can the appellant claim the protection accorded to a bona fide purchaser for valuable consideration? Clearly not. Watkins, under whom he claims, held the legal title to the property jointly with his co-trustee, Charles H. Leber, and the latter never united in any conveyance of that title. But if the devise of Watkins passed the title, those claiming under him were affected with notice of the trusts with which the title was clothed, and equity will treat them as trustees. Watkins, being trustee, had actual notice of the trusts, and those claiming under him had what is equivalent to such notice. The deeds on their face gave notice of the trusts, and they were of record. The appellant and all those claiming through Watkins must be taken to have had the knowledge which these deeds directly imparted, or to which anything appearing therein would, on due enquiry, have led. *The appellant, in becoming a purchaser, was bound to make enquiry into the title, and wherever enquiry is a duty, the party bound to make it is affected with knowledge of all the facts which he would have discovered had he performed the duty. Means of knowledge with the duty of using those means are in equity equivalent to knowledge itself. Cordova v. Hood, 17 Wall. U. S. R. 1, 8; Burwell’s adm’rs v. Fauber & als., 21 Gratt. 446, 463, et seq.
3. But the appellant, in his answer to the bill, and his counsel in argument, invoke for his protection the act of limitations and lapse of time and the alleged acquiescence and laches of Mrs. Leber and her heirs.
Equity, in obedience to the law, applies the statute of limitations to all demands of a strictly legal nature, and in equitable demands by analogy it applies the same bar that the statute fixes for legal demands of the like character, and upon its own inherent doctrine not to entertain stale or antiquated demands, and not to encourage laches and negligence, will sometimes, in cases not barred by the statute, refuse to interefere after a considerable lapse of time from considerations of public policy, from the difficulty of doing justice, when the original transactions have become obscure by time, and the evidence may be lost, and from the consciousness that the repose of titles and the security of property are mainly promoted by a full enforcement of the maxim, vigilantibus, non dormientibus, jura subvenient 1 Story’s Eq. Juris. § 529; Id. § 64a; Bargamin & als. v. Clarke & als., 20 Gratt. 544, 553, and cases there cited.
While in cases of direct or express trusts, as between trustee and cestui que trusts, the statute of limitations has no application during the continuance of the trust, the relations and privity between them being such that the possession of the one is the possession of the other; yet it has been held that if a trustee repudiates the trust by *clear and unequivocal acts or words, and claims thenceforth to hold the estate as his own, not subject to any trust, and such repudiation and claim are brought to the notice or knowledge of the cestui que trust in such manner that he is called upon to assert his equitable rights, the statute will begin to run from the time that such knowledge is brought home to the cestui que trust. 2 Perry on Trusts, §§ 863, S64, and case there cited. But in such case the bar is not applied, unless the cestui que trust be sui juris, or under no disability. Id.
Upon these principles, under the facts of this case, it is evident that the appellant is not protected in his claim by the act of limitations, lapse of time, alleged acquiescence or imputed laches. The limitation to the legal remedy is fifteen years. Code of 1873, ch. 146, § 1. The saving (Id. § 4) is in these words: “If at the time at which the right of any person to make entry or bring an' action to recover any land shall have first accrued, such person was an infant, married woman, or insane, then such person, or the person claiming through him, may, notwithstanding the period mentioned in the first section shall have expired, make an entry on, or bring an action to recover such land, within ten years next after the time at which the person to whom such right shall have first accrued as aforesaid, shall have ceased to be under such disability as existed when the same so accrued or shall have died, whichever shall first have happened.
Taking it then to be true, as averred by the appellant in his answer, and of which there is some evidence in the record, that about or soon after the date of the deed to Watkins, 7th May, 1847, he entered thereunder upon the lot in controversy, and thenceforth until his death in 1861, with the knowledge of Mrs. Leber, had and held actual, continuous, exclusive, adverse possession thereof, yet Mrs. Leber, during all that time, and until her death in 1862, *was a married woman, and consequently within the saving aforesaid of the statute. Continuously from the date of her death, when her estate devolved on her heirs, until the first day of January, 1869, stay-laws were in force and the operation of the statutes of limitation was suspended by legislative enactments. Danville Bank v. Waddill, 27 Gratt. 448; Johnston & als. v. Gill & als., Id. 587. The heirs filed their bill on the first day of March, 1875, less than ten years from the first day of January, 1869, when the statute began to run against their claim. Acquiescence cannot be attrib *197 uted to Mrs. Leber nor laches imputed to her, for the reason that she was all the while after marriage under disability, nor are the heirs justly chargeable with laches in not prosecuting their remedy during the continuance of the war, or for several years after its termination, while the condition of the country was unsettled and the statutes aforesaid were in operation; and the delay of six years after all obstructions were removed in filing their bill, is not so unreasonable as to be a bar to equitable relief.
4. It is finally urged by the appellant’s counsel that if the heirs are accorded the relief sought it should be on condition that they account for the consideration alleged to have been received by Mrs. Leber for the sale and conveyance of the lots. So far as this pretension is based on the idea that the separate estate is chargeable, on recovery of the lots, with the purchase money paid therefor, it cannot be maintained.
The power of a married woman to charge or encumber her separate estate is incident to the jus disponcndi, and the liability of the estate can arise only out of the supposed intention of the wife, and no pecuniary engagement can be a charge on the estate which is not connected by agreement, express or implied, with such estate.
The wife is exempt from all personal liability, and *from all personal decrees and judgments on her contracts. Her undertaking, so far as it is recognized by the court, is not that she will pay the debt, but that her separate estate shall be answerable for it; and that is bound so far only as she has agreed it shall be bound. Darnell & wife v. Smith’s adm’r & als., 26 Gratt. 878; Burnett & wife v. Hawpe’s ex’or, 25 Gratt. 481.
The writing of May 7. 1874, as has been seen, is void as a deed of conveyance. The covenant of warranty contained in it. if not wholly void, at least does not bind Mrs. Leber personally, nor does it bind her separate estate unless so intended. To construe the covenant as an undertaking binding the lots, which she was then attempting to convey, would be manifestly in opposition to her intention, if not absurd; and there is nothing in the nature and terms of the covenant, the subject matter, the situation of the parties, or the circumstances of the transaction, which indicates any intention on her part, or from which such intention may be fairly inferred, to charge the residue of her separate estate.
In enforcing the engagements of the wife against her separate estate, equity always has respect to her intention in making the engagements, and certainly never raises an implied assumpsit to charge the estate in opposition to her intention. In Williams v. Duke of Bolton, 4 Bro. C. C. 297; S. C. 2 Ves. Jr. 138, a married woman, having separate property, for a consideration which she received, sold an annuity charged upon that property. The annuity being void for want of a proper memorial, it was held that the grantee would ímt have an equity specifically to affect the fund clothed with a trust for the separate use of a married woman, with the consideration, upon the ground of the difficulty of raising an implied assumpsit contrary to the intention of the parties. See 1 Lead. Cas., Eq. (Ed. 1876), Part 3, pp. 696. *697, where the case above referred to and other cases of like import are cited by the English annotators.
Although, however, the consideration for the lots is not chargeable thereon, nor on the general separate estate, yet if it was paid by the trustee to Mrs. Leber and invested in other property, and as invested it remained until her death and then descended to her heirs, equity and good conscience would seem to require that they should surrender or account for it on receiving back the lots. In such case equity would be extended to them only on condition of their doing equity to others. But unfortunately for the appellant, the case supposed is not made out by the record. There is some evidence tending in some degree to show the purchase of other property by Mrs. Leber, and that possibly the purchase money claimed to have been paid by Watkins, may to some extent have gone into this property. But the evidence on this point is far too vague, uncertain and unsatisfactory, to be relied on as the basis of a decree. If. however, it had been made clear that Watkins paid a full consideration for the lots, and that the money so paid was invested by or for her in other property, to hold the heirs liable to account for this property in their suit to recover the lots, it would have been necessary to prove that such property descended to the heirs; and it is not pretended that there is any such proof in the reeord. Upon the whole case, I am of opinion that there is no error in the decree of the chancellor, and that the same should be affirmed.
The other judges concurred in the opinion of BURKS, J.
The decree was as follows:
This cause, which is pending in this court at Richmond, having been there fully heard, but not determined, *this day came here the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that there is no error in the said decree. Therefore it is decreed and ordered, that the same be affirmed, and that the appellees recover of the appellant their costs by them about their defence of said appeal expended, and thirty dollars for their damages; which is ordered to be entered on the order-book here and to be forthwith certified to the clerk of this court at Richfhond. who shall enter the same on his order-book, and certify it to the said chancery court of the city of Richmond.
Decree affirmed.