Burks, J.,
delivered the opinion of the court.
At the date of the deed executed by John H. Pamplin, Daniel A. Cheatwood, and Jane London, Martha L., the wife of the said John H. Pamplin, was entitled in fee simple to certain lands in Nelson county derived by descent from her father, and to other lands in said county devised to her by her uncle, Austin Wright. The controversy in this case relates exclusively to these lands, and the bill seeks to subject them as the separate estate of the said Martha L. Pamplin, created, as alleged, by the deed aforesaid.
The court is of opinion, that all the estate, right, title, and'interest of the said John H. Pamplin, as husband of the said Martha L., in and to said lands, passed, under *313 and by virtue of said deed, to the said Daniel A. Cheat-wood and Jane London, in trust for the said Martha L. Pamplin.
The deed is not merely a renunciation by the husband of all his marital rights in respect of said property, but it is a renunciation in favor of his wife, and to make it effectual, it is expressly provided, “ that the said property, right, interest, and subject shall stand forever discharged from any claim on his part, as husband, leavinq the same in the hands of the said Daniel A. Cheatwood and Jane London, in trust for the said Martha L. Pamplin, leaving to them to account with the said Martha,” &c. The intent, as well as the legal effect, of this deed, was to invest the said Daniel A. Cheatwood and Jane London with whatever title the said John H. Pamplin had to these, lands in right of his wife, and to create a trust for her benefit.
The precise nature and extent of the husband’s interest in the lands do not distinctly appear from the record. They might and should have been made to appear more satisfactorily. The seisin of the wife is not questioned in the pleading or in the arguments of counsel. According to the recitals of the deed, at the date thereof, the lands descended and devised had not been divided amongst the heirs and devisees, but they were no doubt iu the possession of some or all of them. Partition was made at some time, it does not appear when.
It is clear that the seisin of one is the seisin of all the co-parceners and co-tenants. Marriage alone, without issue, casts upon the husband an estate in all the wife’s real property in possession, whether of inheritance or of freehold for life, during the joint lives of himself and wife. The death of the wife, or the death of the husband, ends this estate. If the property comes to the wife after marriage, the consequence is the same. Such an estate is denominated by some text-writers an estate as tenant by the mere marital right, as distinguished from an estate as tenant by *314 coin’tesy initiate. If the wife is actually seized, during the coverture, of an estate of inheritance, such as that issue of the marriage may by possibility inherit it as jjejr ¡-0 -¿pg wife, upon the birth of such issue alive the husband acquires an estate in the land as tenant for his which, during the coverture, is said to be initiate; and upon the death of the wife, if he survive her, becomes consummate.
It does not appear in this case whether or not there was issue of the marriage. However that may be, whatever estate, right, title or interest the husband, as such, had in the lands in question, whether as tenant by the mere marital right or as tenant by the courtesy initiate, was conveyed by the deed aforesaid in trust for his wife. Such estate was liable for his debts, and was subject to his disposal by deed without the concurrence of his wife. Poindexter & wife v. Jeffries & others, 15 Gratt. 363, 376; 2 Minor’s Ins. (2d ed.), 103, et seq.; 1 Bishop’s Law of Married Women, §§53, 535 (note 3), 536; 1 Wash, on Real Prop. 137, 141 (mar. pp.); 2 Kent’s Com. 130, 131 (mar. pp.); 4 Id. 28, 29, 30, et seq. (mar. pp.)
The court is further of opinion that, under and by virtue ■ of the said deed, Mrs. Pamplin acquired a separate estate in the interest which her husband had in the lands, and which was conveyed to the trustees named in said deed, and that this equitable estate was distinct from her legal reversionary estate in fee, and did not merge therein.
If there had been no language used in the deed appropriate to the creation of a separate estate, still the deed ■itself would have imported such estate.
The general rule is that a conveyance by the husband directly to his wife, although void at law, or to a third person for her benefit, is construed as operating to her separate use; and the reason assigned is, that the conveyance otherwise would be wholly inoperative. Leake, trustee, v. Benson & als., 29 Gratt. 153; Harshberger’s adm’r *315 & als. v. Alger & wife, 3 Va. Law Journal, 78, 85; 31 Gratt. 52, and authorities cited in these two cases.
But the language in the deed leaves no room for on this question. The separate estate is expressly created, and resort to implication is unnecessary.
Merger is described as the annihilation of one estate in another. It takes place ususually when a greater estate and á less coincide and meet in one and the same person, without any intermediate estate, whereby the less is immediately merged—that is, sunk or drowned in the greater. To this result, it is necessary that the two estates should be in one and the same person, at one and the same time, in one and the same right. 2 Bouv. Institutes, 375, No. 1989; 2 Minor’s Inst. (2d ed.), 368, et seq.
It is perfectly plain that under the construction we have given to the deed of September 6, 1845, there was no merger in this case. The legal title to the particular estate is in the trustees under the deed, or their representatives, while the reversion in fee is in the wife. The two estates have never met in the same person, and therefore merger is impossible. For the like reason, there has been no merger of the wife’s equitable estate. Generally, where the legal and equitable estates in the same subject meet in the same person, the equitable is merged in the legal estate, because, as it is said, one cannot be trustee for himself. Here the wife still holds her equitable estate, while the legal title to the subject is outstanding in the trustees. Even, however, where merger would take place at law, equity often interferes to prevent it. It is not favored in equity, and is never allowed, it is said, unless for special reasons, and to promote the intention of the party. While the rule at law may be inflexible, in equity it depends upon circumstances, and is governed by the (intention, either expressed or implied (if it be a fair and just intention), of the person on whom the estates unite, and the purposes of justice, whether the equitable estate shall ' *316 merSe or kept in existence. 4 Kent’s Comm. 102 (mar. p.); Brockenbrough’s ex'x v. Brockenbrough’s adm’r & others (not yet reported); 2 Minor’s Inst. 369 (2d. ed.)
Kow, manifestly, the intention of the deed of September 6,1845, was to divest the estate of the husband in his wife’s property and secure it to her separate use. If merger was the immediate consequence, as contended for by the appellee’s counsel, then the husband’s marital rights reattached eo instanti, and the intended operation of the deed was defeated. Such a result a court of equity never would permit. But it is not necessary to invoke this equitable rule in the present case, as we are of opinion, for the reasons already stated, that merger was not possible under the circumstances.
The court is further of opinion, that Mrs. Pamplin, although she labors under all the disabilities of coverture as to her reversion in fee in said lands, has, in equity, under said deed, all the rights and powers of a feme sole in and over her said separate estate. She takes the whole interest of her husband under the deed as her separate estate without limitation or restriction upon her powers over it. Indeed, the largest powers are expressly conferred. Her husband renounces in her behalf all his marital rights in her property and stipulates, that she “ may at any aftertime receive, control, enjoy, and dispose of the same for her own separate use and benefit, separate and apart from him as fully as if no marriage had ever been had between them, leaving her the power and right to dispose of the same as fully as if she were an unmarried woman. Such is the broad language of the deed. The stipulation of the husband in the subsequent part of the deed, that he would leave the property “ for the use, benéflt and support” of his wife “as fully as if she had never married,” is of the same import as the language already quoted ? It is not restrictive in its meaning and application. It must be read in connection with what precedes *317 and follows. It is evidently used to exclude the husband’s . . rights, not to hunt or restrain the wife s, and the same intent is manifest in every part of the deed. Under deed, Mrs. Pamplin has the power to use, control, enjoy and dispose of her separate estate, which is confined to her husband’s interest in her lands (the personal property having perished), in like manner and to the like extent as if she were sui juris. In fact, under this deed, she is, in equity, sui juris as to this separate estate.
The court is further of opinion that as the greater includes the less, the absolute power of alienation in the wife includes the power, at her will and pleasure, to encumber and charge her separate estate with the payment of debts. "While she cannot, by her engagements, subject herself to any personal judgment or decree, she may bind her separate estate, if she will, and equity will make good the charge against the estate. To bind the estate, her engagements must have reference to and be made upon the credit of such estate. She must intend to make it liable. The intention, however, need not be express. It may be implied. It is implied, unless there is something to rebut the implication, when she executes a bond, note or other instrument for the payment of money, either as principal or as surety for her husband or other person. Such is now the well settled law of this state. As the charge or liability is a question of pntention, it may of course be extended to the whole or to a part of the estate. If no specific part is appointed for the payment of the debt, the fair implication is that the whole estate was intended to be made liable. If, on the other hand, only a part of the estate, expressly or by fair implication, is designed to be charged, no liability will attach to the residue. Burnett & wife v. Hawpe’s ex’or, 25 Gratt, 481; Darnall & wife v. Smith’s adm’r & als., 26 Gratt. 878. These cases have been repeatedly referred to with approbation in subsequent decisions by this court. See Leake, trustee, v. Benson & *318 als 29 Gratt. 153: Bank of Greensboro’ v. Chambers & others, 30 Gratt. 202, 209; Justis v. English & als., Idem, 565 579; Harshberger’s adm’r & others v. Alger & wife & als., 3 Va. Law Journal, 78, 85; 31 Gratt. 52.
The court is therefore further of opinion, that Mrs. pamp];U) by executing the two bonds in the proceedings uentioned must be presumed to have intended to bind her separate estate aforesaid for the payment of said bonds, and as there is nothing to indicate that she intended the obligations to be confined to a part only of said estate, she must be taken to have intended to bind the whole. The fact, that the bond to the appellant Garland, the sum of money therein specified is expressed as “ being in part for the purchase of the land and buildings thereon (mills, &o.) at the Gulf Ford, purchased, &c., does not imply an intention to charge that land only, The language was used merely to express the consideration of the bond. There are no extrinsic facts and circumstances sufficient to show, that the liability of that land only was in contemplation of the parties in the execution of the bond.
It is very possible, that Mrs. Pamplin was under the impression, that her whole estate, the reversion as well as the particular estate which had been settled to her separate use, ivas at her sole disposal, as if she were a feme sole and that she could validly contract debts upon the faith of it. This would seem probable from the fact, that _ she sold or attempted to sell a portion of the land absolutely to McDonald and others. But if such misapprehension existed, it could not operate to relieve her estate from liability to the extent of her power to charge it. In delivering judgment in the somewhat noted case of Tullett v. Armstong, 4 Beavan R. 319, 323, Lord Langdale, after stating that the execution of a bond, bill, promisory note or other obligation by a married woman having a separate estate, furnished a conclusive inference of an intention, a clear one, on her part, that her separate estate should be *319 bound, says, “Again, I apprehend it to be clear, where a married woman having separate estate, but not ■knowing perfectly the nature of her interest, executes an instrument by which she plainly shows an intention to bind the interest which belongs to her, then, though she may be mistaken as to the extent of the estate vested in her, the law will say that such estate as she may have shall be bound by her own act.” The act of limitations relied upon by Mrs. Pamplin in her answer is no bar to the claims asserted against her separate estate. The bonds, though void at law, are valid in equity as evidences against the estate. 2 Perry on Trusts (2d ed.), § 663, and authorities there cited.
The bond to Brockman is dated 8th of November, 1863. Mrs. Pamplin in her answer avers that it is a Confederate debt, and Brockman in his petition admits that it is subject to scale.
It results from what has been said, that, in our opinion, the decree of the circuit court is erroneous. It is erroneous in construing the deed of September 6, 1845, as restricting the power of Mrs. Pamplin to bind her separate estate by her contracts and engagements, and in making the claims of her creditors subordinate to her support out of said estate. It is further erroneous in subjecting the Gulf Ford land to sale out and out. It seems that Mrs. Pamplin contracted to sell this land to McDonald and others, retaining the title, and repurchased it from them, after they had erected valuable improvements upon it, and that she gave, the bond to Garland, a creditor of McDonald, for the consideration in part of the repurchase. Now, Mrs. Pamplin, being under the disabilities of coverture, had no power to make any contract binding upon her for the sale of the reversion in fee in this land. So far as she undertook to sell the reversion, which was hers, but was no part of her separate estate, the contract was not voidable merely, but absolutely void. She could sell her separate *320 estate, her husband’s interest in the land acquired by her under the deed of 1845, and to that extent, and no further, •she could and did bind said land; and such interest, but not the fee, was liable for the payment of the Garland debt.
It would seem from Mrs. .Pamplin’s answer that she would perhaps not object to .the sale of her entire estate in the Gulf Ford land as ordered, if she was not disturbed in the use and enjoyment of the residue of her lands; but as a partial reversal of the decree lets the creditors in upon her husband’s interest, now hers, in all the lands, we think errors to her prejudice apparent in the decree should be corrected, and this necessitates the total reversal of the decree. If, when the case is remanded, she is still willing that her entire estate in the Gulf Ford land shall be sold and the proceeds paid to Garland on his debt, a consent decree to that effect can be entered by the circuit court, and by uniting with her husband in a deed to the purchaser she can convey a good title in fee simple. *
If the sale has already been made under the decree, and it was made after six months from the date of said decree, and such sale has been confirmed, the rights of the parties are fixed by the statute. Code of 1873, ch. 174, §11.
The decree of the circuit court will be reversed and the cause remanded, with directions to order an account to be taken of the separate estate of Mrs. Pamplin, and as the bill in the case is in behalf of all the creditors of Mrs. Pamplin, an account of all debts and claims for which said separate estate is liable, including the debts of the appellant Garland and Willis A. Brockman, scaling the debt of the latter to. its true value, and when said debts have been ascertained, to proceed to subject said separate estate to the payment of the same, and further proceed to final decree, in conformity with the principles hereinbefore declared.
*321 Though Judges Moncure and Anderson were absent when the opinion was delivered, they had concurred in the decree which was to be made.
The decree was as follows:
This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that all of the estate, right, title and interest of John H. Pamplin in the lands of his wife in the bill and proceedings mentioned, was, by the deed of the 6th of September, 1845, conveyed to the trustees therein named in trust for the benefit of the appellee, Martha L. Pamplin, the wife of the said John H. Pamplin, and that the said Martha L. Pamplin, under and by virtue of said deed, acquired, in equity, a separate estate in her husband’s said estate and interest so conveyed as aforesaid, distinct from her legal estate in fee in said lands and which did not merge in said legal estate.
The court is further of opinion that the said Martha L. Pamplin, by the provisions of said deed and upon the well settled principles of equity, was invested with full power to use, enjoy, control, alien and dispose of her said: separate estate in like manner and to the like extent as if she were a feme sole, and as incident to this absolute power of alienation she had the right and power to charge and incumber said separate estate with the payment of debts, if she chose to do so.
The court is further of opinion that the said Martha L. Pamplin, by executing the bond to the appellant Samuel M. Garland, and the bond to Willis A. Brockman, in the proceedings mentioned, must be presumed to have intended thereby to charge her said separate estate with the payment of said bonds, and the said separate estate is therefore in *322 equity liable for such payment; but said liability extends only to said separate estate in the interest of her husband acquired under the deed aforesaid, and not to the legal estate in fee of said Martha L. Pamplin in said lands, which legal estate is distinct from said separate estate and could not be charged by the mere execution of said bonds with the payment thereof, by reason of her disabilities of coverture.
The court is therefore of opinion that the said decree of the circuit court of Nelson county is erroneous in construeing the deed of September 6 th, 1845, as restricting the power of said Martha L. Pamplin to bind her separate estate by her contracts and engagements, and in making the claims of her creditors subordinate to her support out of said estate; and that said decree is further erroneous in subjecting the Gulf Ford land to sale out and out. It seems that the said Martha L. Pamplin contracted to sell this land to McDonald and others, retaining the title, and repurchased it from them, after they had erected valuable buildings upon it, and that she gave the bond before mentioned to the appellant Garland, a creditor of McDonald, for the consideration in part of the repurchase. Being under the disability of coverture, she had no power to make any contract binding upon her for the sale of the fee in this land. So far as she undertook to sell the fee, which was hers, but no part of her separate estate, the contract was not voidable merely, but absolutely void. She could make a valid contract for the sale of her separate estate, her husband’s interest in the subject acquired under the deed of 1845, and to that extent, and no further, she could and did bind said land; and such interest, but not the fee, was subject to sale for the payment of the Garland bond.
Therefore, it is decreed and ordered that the said decree be reversed and annulled, and that the appellant recover against the appellee, Martha L. Pamplin, to be levied of *323 her said separate estate, his costs by him expended in the prosecution of his appeal aforesaid here. And this cause is remanded to the said circuit court with directions to order accounts to be taken of the separate estate aforesaid, and of all debts and claims for which said estate is liable according to the principles hereinbefore declared, including the debts aforesaid of the appellant Garland, and Willis A. Brockman, scaling the latter to its true value, if ascertained to be a Confederate debt, and when said debts have been established to proceed to subject said separate estate to the payment of the same; and further to proceed to final decree in conformity with the principles aforesaid and the opinion hereinbefore expressed.
Which is ordered to be certified to the said circuit court of Nelson county.
Decree reversed.