**Richmond.**

BAIN & BRO. v. BUFF'S ADM'R AND ALS.

April 6, 1882.

1. MARRIED WOMEN—*Separate estate.*—It is settled in Virginia that a wife may make her separate estate liable for her own debts, or those of her husband, or other person; unless the instrument creating the estate, expressly or impliedly denies or limits such power.

2. IDEM.—Her power to alien or charge her estate may be denied or limited in its creation, expressly or impliedly, but the intention so to do must be clear.

3. CASE HERE.—Father by will directed that certain part of his estate be paid over to his daughter for the sole and separate use of herself and child or children, during her life, and after her death to be vested in fee in her child or children. Afterwards, in 1871, daughter drew two drafts on her trustee for $500 and for $2,026.58, which were duly accepted by the trustee "payable when funds are in my hands payable to her." The money for which said drafts were given was due by her husband, or advanced by B to him to pay his debts, or to embark in business. Not being paid at maturity, suit was brought to subject her separate estate for their payment.

HELD :

   1. The estate was settled on her for her separate use during her life. Power to dispose of and to bind it for debts, was not denied her, or limited.

   2. The words "for the sole and separate use of herself and child or children," &c., do not give any estate to the child or children, but indicate the motive for the gift to the mother. See *Leake, Trustee* v. *Benson and others*, 29 Gratt. 153.

   3. She had power to bind her estate by the drafts, and as she could not bind herself personally, she must have meant, by drawing the drafts, to bind her estate.

   4. There is no proof that the drafts were procured from her by fraud.

   5. The drafts were not without consideration, but were for loan of money to her or her husband at her request.

6. The act of limitations does not apply to the case. The drafts being drawn on her trust fund and accepted as payable out of that fund, operated as an equitable assignment *pro tanto* of that fund. A trust was thus created in favor of the drawee, which is not subject to statutory limitation.

Appeal from decree of hustings court of Portsmouth in suit of Bain & Brother *against* John H. Gayle, administrator with the will annexed of H. Buff, deceased, and as trustee under said will for Amelia N. Cutherell and her son, Henry, daughter and grandson, and Barbara Buff, widow of testator. Amelia was the wife of Samuel Cutherell, who died in 1875. Testator's will contained this provision: "After settling my estate and assigning my wife's dower, to invest all money in safe six per cent. interest-bearing stocks making semi-annual payments, in trust for the separate maintenance of my daughter and her child or children, which, with the interest from investments now made by me, the rents of my houses and hires of my negroes, are to be all appropriated and paid over to her for her sole use and benefit. And the reversionary interest held by my wife during her life, is, at her death, to be vested and applied as in the mode above directed, for my said daughter, her child or children; but upon the further provision and trust that the dividends, interest, rents, hires, issues and profits of my estate aforesaid, when received by my executor, are to be paid over to my said daughter for the sole and separate use of herself and child or children, if she shall hereafter have more than one, so that the same shall in no way whatever be subject to or liable for the debts or contracts of her husband, and to continue for and during the term of her natural life, and at her death, my said estate is to be vested in fee in her child or children, during whose minority the income of my estate after the mother's death is to be applied to their maintenance and education."

In 1871, Mrs. C. drew two drafts in favor of plaintiffs on the trustee for $500 and $2,026.28, which the trustee duly accepted, " payable when funds are in my hands payable to Mrs. Cutherell." The drafts were drawn for money due by her husband or advanced by the plaintiffs to pay his debts, or to embark in business. The drafts were payable twelve months after date; and not being paid at maturity, this suit was brought to subject the separate estate of Mrs. Cutherell to their payment. The hustings court dismissed the bill. The defences relied on and the way in which they are disposed of, are set out in the opinion of the court.

*W. W. & B. T. Crump,* for the appellants.

*Holladay & Gayle,* for the appellees.

BURKS, J., delivered the opinion of the court.

This is an appeal from a decree of the hustings court of the city of Portsmouth, dismissing the bill of the appellants (Bain & Brother), brought by them to subject the separate personal estate of Mrs. Amelia Cutherell (a married woman) to the payment of two drafts or orders drawn by her on her trustee, John H. Gayle, endorsed by her to the appellants, and accepted by the trustee.

A consideration of the several grounds taken by the appellees' counsel in support of the decree will be the most convenient mode of testing its correctness.

1. The estate of Mrs. Cutherell is derived under the will of her father. There is no doubt that it is so settled as not to be liable for the debts of her husband by virtue of his marital rights, and the first and main question in the case is, whether she had the power to bind it for his debts, or even for her own. It is contended by her counsel that she had no such power.

However it may be elsewhere, the general proposition must be regarded as established in this State, that whenever, in any case, it is once determined that a married woman has a separate estate, it results as matter of law that she has to the fullest extent the incidental power to make it liable for her debts, or her husband's, or anothers, if she will, unless such power is denied or limited, or in some way qualified, expressly or impliedly, by the instrument creating the estate. The power to bind the estate for debts is incident to the *jus disponendi*. *Frank & Adler* v. *Lilienfeld and others,* 33 Gratt. 377, 394. The adjudged cases to this effect are too numerous for citation in an opinion. We name a few only of the more recent. *Penn and others* v. *Whitehead and others,* 17 Gratt. 503; *Burnett and Wife* v. *Hawpe's Ex'or,* 25 Gratt. 481; *Darnall and Wife* v. *Smith's Adm'r and others,* 26 Gratt. 878; *Justis* v. *English and others,* 30 Gratt. 565; *Garland* v. *Pamplin,* 32 Gratt. 305.

Contrary to the course of the common law, in the creation of these equitable estates, restraint, either absolute or qualified, may be imposed on the power of alienation and its incidents, and the intention to restrain may be either express or implied, but in either case it must be clear.

There is certainly no express limitation on the power of Mrs. Cutherell to dispose of or to encumber the fund arising under the will; but it is earnestly contended that the power is impliedly denied or restrained, because its exercise would or might defeat the purposes of the trust—namely, the support and maintenance of her and her children, and thus thwart the supposed intention of the testator. This argument assumes the important fact that the children have an estate or interest in the trust subject, cognizable by the courts, and so blended with that of the mother as to make alienation by her impossible without a destruction of the whole trust. Some such cases are found in our reports. See *Markham* v. *Guerrant & Watkins,* 4 Leigh,

300 ; *Nickell & Miller* v. *Handly and others,* 10 Gratt. 336 ; *Coutts* v. *Walker,* 2 Leigh, 268. But we do not regard the present case as belonging to the class mentioned. All the dividends, rents, hires, issues, and profits, which constitute the trust fund, are required by the will to be paid over by the trustee to *Mrs.* Cutherell. The whole interest is vested in her absolutely and solely—not jointly with the children. The words "for her sole and separate use of herself and her child or children," &c., do not, we think, give any estate to the "child or children," but indicate the *motive* for the gift to the mother. The case is very similar to *Leake, Trustee* v. *Benson and others,* 29 Gratt. 153. In that case the declaration of trust was in the following words : "In trust for the benefit of my wife and children aforesaid, giving, granting, and conveying for my wife an estate for life, and at her death an estate in fee simple," &c. It was decided that the wife took a life estate in the trust property, not jointly with the children, but for her separate use and benefit, and that she had the power to charge it with the payment of debts. "It was the intention of the grantor," says Judge Staples, in delivering the opinion of the court, "to give to his wife the trust property for her life, relying upon her discretion and affection for the children so to dispose of the income as would most conduce to the support and comfort of the family. He very properly thought it was best to entrust her with the management and control of the property, rather than to raise unpleasant contentions between her and the children in respect to the proper use and application of the trust estate." The case is supported by *Wallace and Wife* v. *Dold and others,* 3 Leigh, 278 ; *Stinson* v. *Day and Wife,* 1 Rob. 459, and *Penn and others* v. *Whitehead and others, supra.* In the case last mentioned the trust was declared as follows : "To the separate use and benefit of the said Maria P. Whitehead, for and during her natural life, and shall remain in her possession for the

support and maintenance of the said Maria P. and her issue and family, and for no other purpose whatever." These latter words, "for the support and maintenance of the said Maria P. and her issue and family, and for no other purpose whatever," says Judge Moncure in the opinion, "seem to have been intended only to show the motive and purpose for directing the property to remain in her possession instead of that of the trustee, and were plainly to exclude any claim or control of the husband, or liability for his debts, and not to limit or curtail the separate use and benefit for life immediately before, in the same sentence, expressly given to her, nor to give to her 'issue and family' any interest in the subject, in law or equity, during her life."

In *Ropp* v. *Minor and others*, 33 Gratt. 97, 112, the intention to restrain the *cestui que trust* was deduced chiefly from the provision (not found in the present case) that the fund created was to be under the exclusive control and management of the trustee, who was not only empowered but *required* to *apply* the interest or income to the proper maintenance, support, and comfort of the wife. And in *Bank of Greensboro'* v. *Chambers and others*, 30 Gratt. 202, a like intention was inferred from the deed as a whole, and from the plan and scheme of the settlement, the design being manifest not only to provide but *secure* a *home* for the wife and her *family*, as well as for their support and maintenance.

We are of opinion that Mrs. Cutherell had full power under the will of her father to bind her estate by the drafts or orders given.

2. But it is further contended, that she did not intend to charge her estate, if she had the power to do so.

Some of the cases already cited show that the intention of a married woman to bind her separate property is sufficiently manifested by her execution, either as principal or

as surety, of any bond, bill, note or other writing for the payment of money. As she cannot bind herself personally, it is difficult to understand what she could mean by executing such a writing, if it be not to charge her estate. In *Tullett* v. *Armstrong*, 4 Beavan, 319, 323, cited in note, 2 Story's Eq. Jurisp. § 1400, and referred to in *Garland* v. *Pamplin*, *supra*, Lord Longdale said, "She may enter into a bond, bill, promissory note, or other obligation, which, considering her state as a married woman, could only be satisfied by means of her separate estate; and, therefore, the inference is conclusive that there was an intention, and a clear one, on her part, that her separate estate, which could be the only means of satisfying the obligation into which she entered, should be bound." There is no room for doubt in the present case; for the drafts or orders were drawn by Mrs. Cutherell upon her *trustee as such*, and were in effect a direction to him to pay the amounts out of the trust fund, which by his acceptance he promised to do.

3. Again, it is argued that the orders were procured from her by the fraudulent contrivance of her husband and the appellants.

She says in her answer, that when the drafts were brought to her for her signature and endorsement, she supposed that the object was to enable her husband to raise the means to embark in some business enterprise; that she was then so informed, and was led by that representation to give the drafts, hoping that her husband would be able to pay them. These statements of the answer are not responsive to any allegation of the bill, and, being affirmative in their nature, are not evidence for the respondent. They are not established by any proof. On the contrary, one of the appellants testifies (and he is not contradicted) that the draft for $500 was given for a loan to Mrs. Cutherell or to her husband at her request, and the other draft

was for the balance due the appellants from her husband for his individual indebtedness and his half of the indebtedness of Durr & Cutherell, and that the whole matter was fully explained to and understood by Mrs. Cutherell before and at the time the drafts were signed and endorsed by her.

4. It is also averred by Mrs. Cutherell in her answer, that the drafts were without consideration.

The proof is clear and distinct that one of them, as before stated, was for a loan of money to her or to her husband at her request, and the other for her husband's indebtedness, which (as shown) was released or discharged by the draft.

5. The act of limitations is also relied on.

It has no application to the case. The bill was not filed to enforce a personal demand against Mrs. Cutherell. There could be no personal decree against her. The sole object was to reach and subject her estate. The drafts being drawn on her trustee on account of the trust fund, and therefore payable, and in fact accepted as payable, out of that fund, operated as an equitable assignment *pro tanto* of that fund. A direct trust was thus created in favor of the appellants; the enforcement of which is not subject to any statutory limitation.

6. Lastly, it is insisted that the bill was properly dismissed, because it was neither averred nor proved that the condition on which the drafts were accepted and to be paid had arisen.

The bill sets out the drafts and acceptances and they are filed as exhibits. It charges that large sums of money had gone into the hands of the trustee, which were liable to the drafts, alleges the trustee's failure to make settlements, and prays an account and payment out of the trust fund. These allegations of the bill and the proofs in the cause

were sufficient to require an order for the account prayed for.

Upon the whole case, our conclusion is, that the decree of the hustings court is erroneous. It will therefore be reversed and the cause remanded for further proceedings in conformity with the views expressed in this opinion.

DECREE REVERSED.