Christian, J.,
delivered the opinion of the court.
The question in this case depends altogether upon the construction of the will of James McCargo.
The testator, after directing the payment of his debts and after making a liberal provision for his wife, made the following disposition of his property for the benefit of his daughters:
3d. I give to my daughter, Martha McCargo, five choice negroes, sueh as she may think proper to select from my estate, one yoke oxen, four cows and calves, one best horse, saddle and bridle, ten head sheep, two sows and pigs, four hundred pounds pork, two beds and furniture, one black walnut bureau, one small *226 chest of drawers, six sitting chairs, and fifteen hundred dollars in money to her and her heirs forever.
4th. I give to my daughter, Jane McCárgo, ■ five negroes, such as she may select from my estate, one yoke oxen, four cows and calves, one best horse, saddle and bridle, ten head sheep, two sows and pigs, four hundred pounds pork, two beds and furniture, one black walnut bureau, one small chest — drawers, six sitting chairs, and fifteen hundred dollars in money, to her and her heirs forever.
5th. I give to my daughter, Mary Magdalen White, all the property that I have heretofore possessed her of, to her and her heirs forever. .
6th. I give to my daughter, Francis Booth, all the property that I have heretofore possessed her of, to her and her heirs forever.
7th. I give to my daughter, Cieily Elliotte, all the property that I have heretofore possessed her of, to her and her heirs forever.
8th. It is my will and desire, immediately after my death, that all money due me, by bond or otherwise, be collected, and the legacies hereinbefore named paid, and the balance laid out in land, to be divided as hereafter directed; and I hereby request and appoint my friends, Hezekiah MeCargo, Thomas Roberts, John Coleman, Richard Russell and William Bacon, to make the purchase.
• 9th. The balance of my estate, both real and personal, that I now possess, or that may be purchased after my death, of what nature or kind soever it may be, not hereinbefore particularly disposed of, I desire may be equally divided among my several children before named, which I lend to them for and during *227 ~the term of their natural lives, and after their death to be equally divided among their children; but -should either or any of my daughters die without an •heir of their own body, it is my will and desire that •all the property loaned or given Jhem be equally divided among my grandchildren.
The question we have to determine is, whether the •bequests contained in the third, fourth, fifth, sixth and seventh clauses, are to be controlled or restricted by the latter part of the ninth clause. In the first named five clauses, the property bequeathed, by terms plain and unequivocal, is given to the donee respectively, absolutely without any restriction whatever. The words used in each clause are the appropriate and technical words to create an absolute estate. In each clause the bequest is, “to her and her heirs forever.”
It is a settled rule, in the construction of instruments, that if an estate is conveyed, an interest given, a benefit bestowed in one part by clear, unambiguous, •explicit words, upon which no doubt could be raised to destroy or annul that estate, interest or benefit, it is not sufficient to raise a mist or create a doubt from other terms in another part of the instrument. Possibilities and even probabilities will not avail.
The terms to rescind or cut down the estate or interest before given, must be as clear and decisive as the terms by which it was created. If the benefit is to be taken away it must be by express words, or by necessary implication. This rule of construction thus •stated in the clear and comprehensive terms of the Lord Chancellor in Thornhill v. Hall, 8 Bligh’s R, 88, 107, has been substantially adopted by this court, as it. is the established rule of the English chancery. See *228 Mooberry v. Marye, 2 Munf. 453; Rayfield & wife v. Gaines, 17 Gratt. 1. In the last named ease Judge Joynes, delivering the opinion of the court, said Clear and unambiguous provisions expressly made cann°t be controlled by mere inference and argument from general or ambiguous provisions in other parts-of the will.” See also 2 Lomax Ex’ors, ch. 11, § 1, p. 11; Collet v. Lawrence, 1 Vesey, Jr., R. 269; Blake v. Bunbury, 1 Vesey, Jr., R. 194, note 4, and cases therein cited; Jones v. Colbesh, 8 Vesey R. 38.
Row applying these principles and rules of construction to the case before us, it is plain that the testator by the 3rd, 4th, 5th, 6th, and 7th clauses of his will, gave to his daughters an absolute estate in the property bequeathed to them by clear unambiguous and explicit words. Are these bequests controlled or limited by the 8th and 9th clauses of the will which follow, and as before quoted, are in these words:
8th. It is my will and desire, immediately after my death, that all money due me by bond or otherwise be-collected, and the legacies hereinbefore named paid, and the balance laid out in land, to be divided as hereafter directed; and I hereby request and appoint my friends, Hezekiah McCargo, Thomas Roberts, John. Coleman, Richard Russell and William Bacon, to-make the purchase.
9th. The balance of my estate, both real and personal, that I now possess, or that may be purchased after my death, of what nature or kind soever it may be, not hereinbefore particularly disposed of, I desire-may be equally divided among my several children before named, which I lend to them for and during-the term of their natural lives, and after their death to- *229 be equally divided among their children; but should either or any of my daughters die without an heir of their own body, it is my will and desire that all the property loaned or given them be equally divided among my grandchildren.
The court is of opinion, that the absolute estate conferred upon his daughters, given “to them and their heirs forever,” by the preceding clauses, is not affected or limited by the 9th clause.
That clause is limited in its operation, in express terms, to property “ not hereinbefore particularly disposed of.”
The latter provision of the ninth clause, in the words, “but should any or either of my daughters die without an heir of their own body, it is my will and desire that all the property loaned or given them be equally divided among my grandchildren,” has no reference to the absolute estate already given to his daughters in the previous clauses of the will, but is plainly limited to that devised in the' ninth clause. These words, incorporated in the ninth clause, have reference only to such estate as “is not hereinbefore particularly disposed of”—that is, to the property mentioned in that clause, and not to that in which the testator, by clear, explicit and technical words, had already created an absolute fee simple estate.
In Mooberry and others v. Marye (supra) the testator gave to his daughters certain lands, decribing them. He then gave them, in separate clauses, certain slaves which had in his lifetime been delivered to them and deeds of gift recorded. The eighth clause of his will, out of which the controversy arose in that case, was as follows: “ 8th Item. In case of either of my daugh *230 ters’ death before they marry, that then their parts be-equally divided among the surviving sisters.”
The court held, that though the words “their parts” were broad enough to cover the lands devised to them,, yet it was to be confined to the slaves, upon the ground that this limitation, being connected with clauses of' the will having reference to the slaves, could not affect the devisees in fee of the land contained in previous clauses. Judge Hoane said, p. 463: “After having-dismissed one subject and taken up another, he will not be construed to have resumed the former unless his expressions to that' effect be clear and unequivocal.” This remark may be applied with equal force-to the case before us. Here the testator, after having disposed of the property bequeathed to his daughters-in the previous clauses of his will, “to them and their heirs forever,” may be said to have “ dismissed that subject from his mind and ta,ken up another,” to-wit,, that which he had directed to be invested in land, and-which “had not been” therein “before disposed of.”' It was to that and that alone to which the latter part of the ninth clause evidently has reference.
In Thornhill v. Hall (supra) the testator, after making certain provision for his daughters, married and; unmarried, devised to his son R the profit rent inHlaehouse; and then provided, “and further, if any of the above legatees should die, or die unmarried, then the property bequeathed to them to be divided equally among the survivors of them.” It was held, that the devise to his son R (who died unmarried) was not cut down to a life estate by the clause of survivorship (though in terms it applied to all of the legatees); but that the words of this clause applied to his unmarried, daughters only.
*231 This case was afterwards taken by appeal to the House of Lords; and the lord chancellor, then Lord Brougham, said (and I quote his language as most apposite to the case before us): “ My lords, I hold it to be a rule that admits of no exception in the construction of written instruments, that where one interest is given, where one estate is conveyed, where one benefit is bestowed, in one part of an instrument, by terms clear, unambiguous, liable to no doubt, clouded by no obscurity, by terms upon which, if they stood alone, no man breathing, be he lawyer or be he layman, could entertain a doubt, in order to reverse that opinion to which the terms would of themselves and standing alone have led, it is not sufficient that you should raise a mist, it is not sufficient that you should create a doubt, it is not sufficient that you should show a possibility, it is not even sufficient that you should deal in probabilities; but you must show something in another part of that instrument which is as decisive the one way as the other terms were decisive the other way; and that the interest first given cannot be taken away either by taciturn or by dubium or by possibile, or even by probabile; but that it must be taken away, and can only be taken away, by expressum et certum.” 2 Clarke & Finn. R. 22, 36.
Applying these principles of the English chancery, and of this court, to the case before us, we are inevitably led to the conclusion, that the absolute estate vested in the daughters of the testator by the five clauses of the will above quoted, cannot be limited or contracted by the subsequent provision in the latter part of the ninth clause, that limitation being confined to the property devised in the ninth clause only.
Hor is there anything in the codicil to alter this construction or to show a different intention of the tes *232 tator. It is plain that the testator by his codicil only designed that the land to be purchased should stand in place of the money before absolutely bequeathed, if the occasion should arise for such substitution; but in point of fact no such substitution was ever made.
We are therefore of opinion, that there is no error in the decree of the circuit court upon the construction of the will of the testator; and the same be affirmed.
Decree aííirmed.