Christian, J.
I am constrained to dissent from the opinion of the majority of the court in this case. "With great respect for the opinions of my brethren, I think the conclusion arrived at, is directly opposed by the *332 whole current of authority in this State, and runs counter to the established law as I understand it.
I will proceed therefore to express my own views of ease regretting, that after a careful consideration, I am forced, with my convictions of what is the established law, to enter my unqualified dissent, upon the ma™ raised by the record.
’ Before entering upon a discussion of that question I desire to express my concurrence in so much of the opinion of the majority of the court, as declares that the estate which is the subject of dispute, is personal estate. An equitable conversion of the land into money was certainly effected by the will. The direction to sell is imperative. The familiar maxim of courts of equity, (which under certain circumstances changes the very nature of the thing devised, sometimes. making land money and sometimes making money land), that “ whatever ought to be done is considered in equity, as done,” applies with full force to this case. When a will directs real estate to be sold, equity regards it as sold, and from the moment of the testator’s death the real estate is converted into personalty, and as absolutely bears the character, quality and incidents of personal estate, as if the thing devised ' was money. Where the will directs the estate to be sold and the proceeds divided among certain persons entitled thereto, equity regards the conversion as complete, and courts of equity will see t'o it that the conversion is carried into practical effect.
In the case before us, the direction of the will to sell the estate in controversy, is imperative, and upon the principles of equitable conversion it must be regarded as personal and not real estate. (See 1 Lead. Oas. in Equity; 1 Am. Ed. 563, and cases there cited).
I come now to consider as briefly, as the importance of the ease will admit, the main question in the case, *333 and the one in which I do not concur with the court. That question is, whether under the will of the testator Addison Maupin, his daughter Isabella, who after wards intermarried with the appellee James Lenox Jones, took such an interest in the estate of her father as she could dispose of; and whether the deed of said Jones and wife to the appellant Haymond, trustee, conveyed that interest tor the purposes set forth m said deed. Or in other words, whether the estate devised to the daughter, was so restricted by limitations in the will as to deprive her of the power of alienation, or created in her such a separate estate, as prevented the marital rights of her husband from attaching thereto.
The solution of these questions depend upon the true construction to be given to those clauses of the will (taken together) which dispose of and refer to the property in question.
In the fourth clause of the will is the following provision: “After the death of my wife Lucy T. Maupin I wish my estate divided among my children as soon as it can be conveniently done as follows: I give to each one of my children one-fifth part of my estate, subject to a deduction of whatever may be found charged against him or her on account book marked “Ledger” on the back. * * * I wish whatever may be coming to my daughter, Mary E. Hicks, and Lucy Isabella Maupin, put into the hands of a trustee of their own choosing, requiring them to give ample security for the faithful performance of the trust committed to them.” In the sixth clause is the following provision: “ The deduction that I have directed to be made from what may be coming to each of my children upon a division of my estate among them, I wish equally divided among them as hereinbefore provided; that is, I wish the portions coming to my daughters, Mary E. Hicks and Lucy Isabella Maupin placed in *334 the hands of their respective trustees, and used for them as hereinfore directed.”
The seventh clause is as follows: “Should any of my children die without an heir of their body, it is my J j 7 j desire that whatever may then be left, of what they may have received from my estate revert to the same, edually divided among my surviving children with such restrictions in regard to my daughters that may be entitled to a portion as hereinbefore provided.”
These are all the provisions of the will which have any reference to the questions to he determined, and upon the construction of these provisions these questions must be solved.
I think it is clear that under the fourth clause of the will, Mrs. Jones, who was Isabella Maupin, took an absolute estate. The provision is, “After the death of my wife Lucy T. Maupin, I wish my estate divided equally among my children as soon as it can be conveniently done as follows: I give to each one of my children one-fifth part of my estate, subject to a deduction of whatever may he found charged to him or her on account hook marked “Ledger” on the hack. * * * I wish whatever may be coming to my daughters Mary E. Hicks and Lucy Isabella Maupin put into the hands of a trustee of their own choosing, requiring them to give ample security for the faithful performance of the trust committed to them.”
These words certainly create an absolute estate, and are apt and legal words for that purpose—“ I give fio each one of my children one-fifth part of my estate.” The direction that “whatever may be coming” to his daughters “he put in the hands of a trustee,” does not' change the character of the estate devised. It is no less an absolute fee simple estate in the cestui que trust, because the legal title is in the trustee.
*335 But the seventh clause of the will relieves the question from all doubt and conclusively shows that the testator intended to give to his daughters as well as his sons an absolute estate in the property devised. It is in these words: “ Should any of my children die -without an heir of their body, it is my desire that whatever may then he left of what they may have received from my estate revert to the same, to be equally divided among my surviving children,” &c. This plainly implies the power of the first taker to dispose of the whole estate. The limitation over therefore is inconsistent with, and repugnant to the estate granted the first taker, and is therefore void. May v. Joynes, 20 Gratt. 692. I think therefore the daughters took an absolute estate in the property devised to them.
I am also clearly of opinion that the will did not vest in them a separate estate. There are no words in the will creating a separate estate. The word husband is not mentioned in the will at all; although one of his daughters was already married, as she is mentioned in the will as Mary E. Hicks. Certainly there are no express words creating a separate estate in the daughters. The will and every clause thereof may be searched in vain to find such words. There is not a word or line anywhere in the instrument, excluding the marital rights of present or future husband. And it is a matter of inference only and a very slight ground of inference at that, that the testator intended to invest his daughters with a separate estate, and exclude the marital rights of their husbands, because he directed that whatever part of his estate “ might be coming to my daughters be put in the hands of a trustee ” and ■“used for them” by said trustees. It is to my mind, impossible to say, that these words by necessary implication create a separate estate and oust the marital rights of the husband.
*336 ’ But suppose it he conceded that the testator intended his will to invest, and did invest his daughters with separate estate, still there is nothing in the will to ■ restrict or limit the power of alienation of this (so-called) separate estate.
The jus disponendi, the most useful and valuable incident of property, is not restrained by airy line or word ' in this will. Certainly if the property devised to Mrs. Jones be separate estate she may dispose of it, unless her power of alienation be restrained by the instrument creating such estate. IJpon this question this court has.spoken with no uncertain voice.
In Burnett & wife v. Hawpe’s adm’r, 25 Gratt. 486, it was well said by Judge Staples, “It is the established doctrine of this court that a married woman, as to property settled to her own use, is to be regarded as a feme sole, and has the right to dispose of all her separate personal estate, and the rents and profits of her separate real estate, in the same manner as if she were a feme sole, unless her power of alienation be restrained by the instrument creating the estate. As incident to thisjiis disponendi, &feme covert may charge the separate estate with the payment of her debts. She may charge it as principal or surety for her own benefit, or that of another. She may appropriate it to the payment of her husband’s debts. She may even give it to him if she pleases, no improper influence being exerted over her. And although the separate estate is conveyed to a trustee his assent is not necessary to a valid alienation or charge by the wife unless it is required expressly, or by strong implication, in the instrument under which the property is derived.” In support of these well-settled doctrines a number of cases are cited, and the decisions of this court from 4th Randolph down to 21st Grattan, and to which I beg leave to add a very recent case in which the opinion was delivered by *337 Judge Burks reaffirming the same doctrines. Bank of Greensboro’ v. Chambers, 30 Gratt. 202.
It is clear that if the estate devised, can under terms of this will, be held to he seperate estate in Mrs. Jones, she has disposed of it, as she had a right to do, as a security for the debts of her husband. Certainly if it be held, she took a seperate estate she had by all the authorities a right to dispose of it. How it is plain, the estate devised to her, is seperate estate, or it is not—if not, it is an absolute estate. It must be one or the other. If an absolute estate where is the clause in the will which restricts the power of alienation, or which excludes the marital rights of the husband? The seventh clause only can be relied on to effect this result, because it uses the words “ restrictions in regard to my daughters * * as hereinbefore provided.” But that clause furnishes the strongest proof of an absolute estate, for it provides—“Should any of my children die without an heir of their body, it is my desire that whatever may he left revert to my estate, and he equally divided among my surviving children. This plainly implies, as before said, that the first taker has the power to dispose of the whole estate ; and on the authority of May v. Joynes, (supra), makes the estate devised an absolute estate in Mrs. Jones, and all the children of the testator. But the words relied upon to operate as a restraint upon the power of alienation are the words in the same clause, “ with such restrictions in regard to my daughters (that may he entitled to a portion), as hereinbefore provided.”
How it is perfectly plain that all the testator meant to say, and did say in the seventh clause, that whatever might he coming to his daughters (from what was left) from any of his children dying without heirs of their body, should he held by his daughters under the same restrictions (and none other) imposed upon the *338 estate before devised to them in the fourth clause of his will. Now what are these restrictions? Simply and plainly these—that the estate devised should be “ put into the hands of a trustee,” and “ used for them.” These are the only restrictions. Do they impose any restraint on the power of alienation ? Does the mere fact that the estate is to be put into the hands of a trustee to be used for them, affect to any degree the jus disponendi? What has been the uniform decisions of this court on this question ? Let us see. In Vizonneau v. Pegram, 2 Leigh 183, the settlement in express terms, provided that the seperate estate should be held by the trustee for the use of the wife. Notwithstanding, this court said she must be regarded as the absolute owner, and should be permitted to make any disposition of it that she might desire to make. In Brown v. George, 6 Gratt. 424, the testatrix bequeathed property to her married daughter for life, for her seperate use, and so much thereof as may be in existence at her death to go to her children, or their descendants, if any there be. And more fully to preserve said property to the seperate use of the daughter for her life, and to her children after her death, the testatrix appoints a trustee to whom the property is to be delivered by her executor. And she further directs that all receipts given to the trustee by her daughter for payments made to her, either of principal or interest of the property, shall be to him a full discharge. Held that the daughter is entitled to use both principal and interest of the property at her discretion.
See also 17 Gratt. 503, Penn v. Whitehead; 21 Gratt. 521, Muller v. Bayly; Justis v. English, 30 Gratt. 565; Bank of Greensboro’ v. Chambers, 30 Gratt. 202; Darnall v. Smith, 26 Gratt. 878.
I can find no case and I believe none can be found, where (as in this case) the direction of the testator, *339 that the property devised “ be put into the hands of a trustee” to be used for “the cestui que trust, has ever been construed as a restraint upon the power of alien ation, or as excluding marital rights of the husband, On the contrary a number of cases, some of which have been already cited, expressly declare that such a direction that the property be held as trustee, or be put into the hands of a trustee, does not affect the jus disponmdi, or restrain the power of alienation in the cestui que trust.
It has been held by this court repeatedly, and I thought it was the settled law, that the assent of the trustee is not necessary in such a case to the valid alienation of the property, unless required expressly, or by strong implication from the language of the instrument.
Certainly it will be conceded that there are no express toords in the will before us, which operate as a restriction upon the power of alienation, and I am-equally clear that there are no words which raise an implication to that effect. The only words relied upon, are the words “ to be put into the hands of a trustee ” “to be used for them.” But, as already seen, this court has declared these words do not raise such implication.
I think it is plain that under the fourth clause of the testator’s will Mrs. Jones took an absolute fee simple-estate. The subsequent provision as to trustees, does not change the character of that estate, nor does it limit or restrict, or cut down, or rescind it.
It was said in Barksdale v. White, 28 Gratt. 224, “It is a settled rule in the construction of instruments that if an estate be conveyed, an interest given, a benefit bestowed in one part, by clear, unambigous, explicit words upon which no doubt could be raised, to destroy or annul that estate, interest, or benefit, it is not sufficient to create a doubt from other terms in *340 another part of the instrument. The terms to rescind or cuf down the estate or interest before given, must be as clear and decisive as the terms by which it was crea,fed- If the benefit is to be taken way, it must be by express words, or necessary implication.”
Upon this subject, the language of the great Lord Brougham, when lord chancellor of England, uttered in the house of lords, in an important case before that august tribunal, is so appropriate here that I cannot forbear to repeat it. He said, “My lords, I hold it h> be a rule that admits of no exception, in the construction of .written instruments, that where one interest is given, where one estate is conveyed, where one benefit is bestowed, in one part of an instrument, by terms clear, unambiguous, liable to no doubt, clouded by no obscurity, by terms, upon which, if they stood alone, no man breathing, be he lawyer or. be he layman, could entertain a doubt"; in order to reverse that, opinion, to which the terms would of themselves, and standing alone have led, it is not sufficient you should show a possibility, it is not sufficient you should deal in probabilities; but you must show something in another part of that instrument, which is as decisive the one way, as the other terms were decisive the other way: and the interest first given cannot be taken away either by taciturn or debitum or by possibile or even by probabile, but it must he taken away, and can only be taken away, by expressum et cerium.” 2 Clarke & Fin. R. 22, 36.
See also Judge Joynes’ opinion in Rayfield v. Gaines, 17 Gratt. p. 1.
I feel constrained to hold, upon every rule of construction, and upon the established law of this State, as I understand it, declared by an unbroken current of' decisions, that in the will of Addison Maupin, there is no restraint upon the power of alienation of the prop *341 erty devised to his daughters, and there is no provision ’in said will, excluding the marital rights of their husbands.
I am of opinion therefore, that the deed to Haymond, trustee, in which husband and wife both united, was a valid deed, and conveyed the interest of Mrs. Jones, in her father’s estate, and is a valid security for the debts of the husband as set forth in said deed.
I am of opinion therefore to reverse the decree of the circuit court.
Decree affirmed.