## WILLS—DESCENT AND DISTRIBUTION—WORDS AND PHRASES.

[Pike (4th) Circuit Court, May Term, 1905.]

Jones, Walters and Cherrington, JJ.

*ETHEL McDANIELS ET AL. v. FRANK M. HAYES.

1. "HEIRS" NOT A WORD OF LIMITATION, WHEN.

A testator whose only issue was two sons, both of whom survived him, by "item 1" of his will devised to them certain real estate, and by "item 3" provided that "if either of my said sons should die before the decease of my said wife, then the share of said deceased son shall go to his heirs"; one of the sons died before the mother. *Held,* the word "heirs" in "item 3" is not a word of limitation, and upon the death of the son his share of the realty went to his surviving brother. Whether such share would have gone to the children of the deceased brother under the rule in Shelly's case, *quaere.*

2. VESTED REMAINDER UNDER A WILL VESTS, WHEN.

A vested remainder in fee simple in each of the two sons of testator, which either may convey during his lifetime subject to the life estate of the mother, under a will devising all the estate to the wife if she survives testator, and after her death the property to go to the two sons.

3. WORD "SHARES" REFERS TO RESIDUARY ESTATE, WHEN.

The word "share" as used by the testator in "item 3" of the will involved in this case, refers to the residuary estate mentioned in item 2, and not to the specific devises made in item 1.

*J. H. Sanderson,* and *J. D. Post,* for plaintiff in error.

*F. E. Dougherty, L. B. Moore,* and *Eylar & Douglas,* for defendant in error.

---

*Affirmed, no op.. *McDaniels* v. *Hays,* 74 O. S. 515.

McDaniels v. Hayes.

**JONES, J.**

This case was brought on error into this court from the court of common pleas. The petition in the court below was filed by the three children of Isaac W. Hays, asking for the recovery of certain real estate claimed to set aside the deed that Frank M. Hays had received from Isaac W. Hays, or to have the court of common pleas pronounce it null and void.

The title of the defendant rests upon the construction of the will of one James W. Hays, who died in May, 1895, leaving a will that was executed in 1890, and a codicil thereto which was executed in 1895. The petition sets forth a portion of said will sufficient to have the court's construction as 'to the title of the property in question.

The petition alleges that by the terms of "item 1" of this will, James W. Hays gave to his wife, Aurilla Hays, certain real and personal property during her life. That what is termed the home farm, consisting of two tracts of one hundred acres and ninety-three acres, respectively, was given by the provision of "item 1" to his two sons, Frank M. Hays and Isaac W. Hays, the petition setting forth the terms of that item, as well as the two following items of that will.

The petition alleges that by "item 3" of the will, the testator provided that if either of his said sons should die before his said wife, then the share of said deceased son shall go to his heirs. It appears that Isaac conveyed the ninety-three acre tract, or attempted to convey the same, to his brother Frank, February 25, 1901. That on June 7, 1901, Isaac W. Hays predeceased his mother, who died in August, 1904, so that the question arises in this case whether or not under the terms of this will Isaac W. Hays had such vested interest devised to him by "item 1," that he could convey the same. Or if he died before his mother whether he had any interest that he could convey?

A demurrer was interposed to the petition in the common pleas court and was sustained, and it is to the action of the lower court in sustaining that demurrer that error is predicated here.

The will of the testator, James W. Hays, has been attached

to the petition as an exhibit, and made a part of the pleading. The first contention of the defendant's counsel is, that the technical word "heirs" contained in "item 3" of this will is a word of limitation merely, and, that the property given to Isaac W. Hays, in the prior item of the will, is a vested interest. Without discussion it is sufficient to say that the word "heirs" used in "item 3" of this will, is not a word of limitation. It is true these technical words may be sometimes construed as words of limitation, but in this will there is no question in our minds, but that in the event of the death of Isaac W. Hays, before his mother, then the property referred to in "item 3" reverted to his heirs, or in this case, to his children. "Item 3" reads:

"If either of my said sons should die before the decease of my said wife, then the share of said deceased son shall go to his heirs."

It was the devise of the testator in "item 3," in the event of the sons' dying before the mother, the property was to become the property of the children. Had this will been prepared prior to 1840 before the rule in Shelley's case was abrogated, as to wills, the claim of the counsel for the defendant in this case might probably be sustained.

It is claimed by the plaintiffs, the children of Isaac W. Hays, that there is no vested remainder; or if so, that it was divested by "item 3."

"Item 1" of the will gives to the testator's wife, Aurilla Hays, all of his property wherever situate, and at his death or after her death, if she survives him, the testator devises the one-hundred acre tract to Frank M. Hays and the ninety-three acre tract to Isaac W. Hays. This would create a vested remainder. And if there is nothing else in this will divesting the property given in "item 1," Isaac W. Hays and Frank M. Hays have such a vested interest therein that they could convey.

Now then in considering the will in view of what I have said, does "item 1" convey a vested remainder in these two tracts of land, or especially in the tract mentioned in this case, namely, the ninety-three acre tract of Isaac W. Hays; and

McDaniels v. Hayes.

does "item 3" take away or cut down such interest as may have been vested in Isaac W. Hays? "Item 1" reads as follows:

"At the death of my said wife, or in the event she shall again marry, or if I survive her, then at my death, I give and devise the farm on which I reside, containing one hundred and ninety-three acres, more or less, being in two tracts, one of one hundred acres and the other of ninety-three acres, to my two sons, Frank M. Hays and Isaac W. Hays, in the following manner, to wit: the said one hundred acre tract, a part of said home farm as aforesaid, I give to my said son, Frank M. Hays, together with the right to use the cribs and stable standing on said ninety-three acre tract, in common with his brother, Isaac W. Hays. The said ninety-three acre tract being commonly known as the 'Prather Tract' and on which my residence stands, I give to my said son, Isaac W. Hays, subject to the use of said cribs and stable given to his brother, Frank M. Hays."

"I give the exclusive use to a certain granary in said crib on said farm of ninety-three acres to my said son, Frank M. Hays; the rights hereby given to my said two sons, I wish them to have so long as they own said farms."

Taking that item itself, we have no question but that this item gives a vested remainder to the two sons, and that under the ordinary rules governing the construction of wills, Isaac W. Hays would have the remainder in fee simple. And having a vested remainder, he would have a right to sell the farm or to deal with it as his own, subject to the life estate of his mother. It is claimed that the words "following manner," referred to in this item, referred to the property given in "items 2 and 3." Evidently the testator intended to refer to the granary and the stables and the manner they should be used. "I give and devise the farm containing one hundred and ninety-three acres to my two sons, Frank M. Hays and Isaac W. Hays, in the following manner, to wit:" And then defining the manner in which they were to be used. Frank was to have the use of certain buildings upon the ninety-three acre tract devised to Isaac W. Hays. It is to this use we think these words referred.

The contention arises upon "items 2 and 3" of this will. "Item 2" provides that at the death of the testator's wife, or in the event that she should marry again, or if the testator survive, then at his death he bequeaths the real estate and chattels to his two sons, "share and share alike." Or if he should thereafter make an advancement, then an account should be taken of the advancement made to his sons, and that a balance should be struck, so that one should have a lien upon the undivided interest of the other provided in item 2.

"Item 3" reads as follows:

"If either of my said sons should die before the decease of my said wife, then the share of said deceased sons shall go to his heirs."

The crucial point in the case, the main and only question in the case in our judgment, is what was the intention of the testator when he used the word "share" in "item 3"? Did he refer to the entire bequests devised to his children, or did he refer to the residue named in "item 2" of the will?

Taking the will by the four corners, we have given to the will the construction that the word "share" must refer to the property described in "item 2." The reading of "item 1" would bear this conclusion.

Now, he has devised specifically. The testator has given to Frank the one hundred acre tract, and the ninety-three acre tract to his son Isaac. The division of the one hundred and ninety-three acre farm has been consummated in "item 1." He had disposed of that property.

The testator then takes up another matter, the residuum of the estate, the two farms, the "Hill Farm" and "Fayette County Farm" and a certain amount of personal property. He devises this residuum "share and share alike," and in this item is the only place that "share" is found excepting in "item 3" of the will. He refers to it as an "undivided interest," but he cannot refer to the personal property, because he is unable to say what would be the share upon distribution, because of the fact that advances on security debts may have been made. So that it would be very proper to refer to the residuum—as the "shares" of the two sons in this property.

McDaniels v. Hayes.

Having made a specific division of the homestead into two farms, it is very evident that Isaac W. could have no "share" in Frank's farm, and that Frank could have no "share" in the ninety-three acre tract of Isaac W. Hays. But a share could be had in "item 2" of this will, because the residuum could come under the provision that the other two farms should be sold for the payment of the debts, and he might have had in his mind the "shares" that might come into the hands of the executrix.

Then if "item 3" had been stricken out of the will, or if we may consider it as a part of "item 2" (as it follows immediately after "item 2,"), there can be no doubt but that the "share" referred to is the share named in "item 2." Their coming so closely together leads us to believe that they were considered as a part of one another. Again he referred to said share as "the share." "If either of my said sons should die before the decease of my said wife, then the share of my said son shall go to his heirs." What share was "the share" that he referred to, if not the share mentioned in the clause preceding, known as "item 2" of the will?

Then again, from the will it appears that the testator had set apart this home farm for his two sons. In the will he refers to the farm in the following terms: "that the rights hereby given to my said two sons, I wish them to have so long as they own said farms." And later in the codicil of the will, drawn five years after this will, he has referred to one of these farms bequeathed to Frank, as the one that he had "specifically devised to Frank M. Hays." And necessarily he has provided, and has evidently thought, that he wanted to make a change of the stable for the convenience of his two sons, and has provided that a suitable stable shall be erected on that part of said farm "specifically devised" to his said son, Frank M. Hays. And he has provided that a crib that stands on the ninety-three acre tract be removed, i. e., "to remove thirty feet of the crib that stands on the east side of said 93 acre tract and place it on the most suitable location on the farm devised to my said son, Frank M. Hays."

Throughout the will we think it was the intention of the

testator when he used the word "share" in the way that he
did, to use it in connection with the residuum alone.   This is
our construction, and we think that we are aided by the cases
that have been cited from Connecticut and Virginia.   In the
case of *Turner* v. *Balfour,* 25 Atl. Rep. 448 [62 Conn. 89],
there was a specific devise to the devisee of the real estate
known as the Geer house to a grandson, Robert Balfour.   Item
10 following, provided that:

"After the payment of my said debts and funeral expenses
and the preceding legacies and devises, I give, devise and be-
queath half the rest and residue of my estate, of whatever
kind and wherever situate, to my son, David Balfour, to have
and to hold the same during his life, and at his death his share
goes to my grandson, Robert Balfour, to him and his heirs
forever.   The other half of said rest and residue of my estate
I give, devise and bequeath to my son, Thomas Balfour, to him
and his heirs forever."

"Item 11.   In case my said grandson, Robert Balfour,
dies leaving no issue, I give, devise and bequeath his share,
above indicated, to my six children, share and share alike."

Now in that case, the court has held that it refers only to
the residuum, and does not relate back so as to include Robert
Balfour's.   The judge in deciding this case lays down, as one
of the rules of construction, that when in the contents of a will
a word has been used in a particular manner as is found to
have been used by the testator, it is to have the same meaning
when used in another part.   To use the language of the judge,
I will give a quotation as follows, page 449:

"It is a familiar rule of construction that when a word is
used in one part of a will with a certain meaning, it is to have
the same meaning in other parts of the will unless the context
shows that it must have a different one.   We are led, then, to
believe that when the testator used the word 'share' in the
eleventh paragraph of his will he intended precisely the same
thing that he had indicated by that word in the tenth para-
graph,—that is, an undivided half of the rest and residue of
his estate,—and that he did not intend the share mentioned in
the eleventh paragraph to include the devise to Robert in the

McDaniels v. Hayes.

ninth paragraph of the will. The meaning of the word 'share,' the rule of construction, and the words of the will, all concur to bring us to the same conclusion.''

Now in the will of James W. Hays, he had taken the residue and created a ''hotchpotch,'' which he had given to his sons, or what would be left after his debts were paid. The word ''share'' immediately following in ''item 3,'' we think both on principle and authority, that the rule should apply that he used the word in a similar sense, as he did in ''item 2'' of the will. Ordinarily the word ''share'' applies to personal property.

It is one of the rules of construction, that when an estate has been devised clearly and explicitly by the devisor, then before that estate can be cut down, the clause cutting it down must be clear and unambiguous as the clause making the devise. And is that true here? There is some ambiguity in ''item 3'' of this will. There must be clear and unambiguous terms to cut down the interest conveyed by the testator; that hasn't been done in this case, and we think that is one of the rules of construction that could be applied in the case here. In the case of *Barksdale* v. *White*, 69 Va. (28 Gratt.) 224 [26 Am. Rep. 344], in his opinion, Judge Christian quotes this rule of construction, laid down by Judge Roane in *Mooberry* v. *Wayre*, 8 Va. (2 Munf.) 463, namely:

''After having dismissed one subject, and taken up another, he will not be construed to have resumed the former, unless his expressions to that effect be clear or unequivocal.''

By ''item 1'' of the will the testator had devised the home farm to his two children, and the subject was never again taken up either by ''item 2 or 3'' of the will. This rule of construction applies here, that the testator having devised the home farm and not again referring to it, had intended to dispose of a vested interest in the property, and hence it is not affected by ''item 3'' of this will.

We think that the court of common pleas in giving a vested interest to the defendant, Frank M. Hays, did not err, and

Pike County.

the judgment of the court will be affirmed without penalty, and the entry may be so made.

**Cherrington** and **Walters, JJ.,** concur.